UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lisa Wagner,

Plaintiff,

vs.

Officer John Jorgensen, (in his individual and official capacity); Officer Bryan Anderson, (in his individual and official capacity); and the City of Roseville,

Defendants.

Case No. 14-cv-03422 (PJS/SER)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION COMPEL**

## INTRODUCTION

Plaintiff Lisa Wagner is seeking damages for "mental anguish" related to her April 13, 2013 arrest. *See Complaint*, ECF No. 19, ¶ 22, Ad Damnum Clause, ¶ 6. During her deposition, Wagner testified that, as a result of her arrest, she experiences recurring [redacted] *See Wagner Depo.*, Ex. 1, p. 173-200. She testified, at length, about the "mental anguish" that she attributes to this incident. However, in an effort to avoid producing authorizations for release of medical records, she mischaracterizes her claim as garden variety emotional distress claim. This is improper as her medical records are relevant and, based on her testimony, she has placed her mental health condition in controversy. Therefore, Defendants are entitled to her complete mental health records and an independent medical examination as a matter of law.

## FACTS

On November 24, 2014, Defendants served Interrogatories, Requests for Production of Documents, Requests for Statements, and Requests for Production of Medical and Authorizations on Plaintiff. *See Defendants' Discovery Requests*, Ex. 2. These discovery requests specifically addressed Plaintiff's medical condition seeking the following:

> 2. Give the names, addresses and dates of examination and/or treatment by any and all doctors and other medical providers who treated you as a result of the injuries alleged to have been received by you in the alleged incident including the name and address of any hospitals where you were hospitalized as a result of the alleged incident and the dates of such hospitalization, and the names and addresses of all medical providers.
>
> 3. Set forth in detail such injuries as you allege you now suffer from as a result of the incident that is the subject of Plaintiff's Complaint, setting forth in detail such symptoms as are evident to you and if you have fully recovered from any of the injuries, state the approximate date upon which you recovered from such injuries or any of them.

*Id.* at Interrogatories, p. 4. Defendants also request that Plaintiff produce medical authorizations.

> 2. Written authority signed by the Plaintiff to permit the inspection of all hospital and other medical records concerning said Plaintiff's physical, mental or blood condition.

*Id.* at Request for Production of Medical and Authorizations.

On January 23, 2015, Plaintiff responded to this discovery, identifying injuries allegedly sustained during the incident, treatment received at Mayo Clinic, and therapy provided by Dr. Carlton Frank, but refused to execute medical authorizations on the basis

of the physician-patient privilege. *Plaintiff's Answers to Interrogatories*, Ex. 3, p. 3; *Plaintiff's Response to Request for Medical Records*, Ex. 4, p. 3.

***Dispute regarding Discoverability of Medical Records***

Defense counsel wrote Plaintiff requesting authorizations be provided and her objections to producing the authorizations on the basis of physician-patient privilege be waived as Plaintiff placed her mental and physical condition in controversy. *Correspondence to Kuhlman (2/12/15)*, Ex. 5. In response, Plaintiff supplemented her discovery responses, but did not provide the requested medical authorizations, stating that she "has provided all medical records in her possession. . ." *Correspondence to Flynn (3/5/15)*, Ex. 6; *Supplemental Answers to Interrogatories*, Ex. 7. The records provided by Plaintiff included medical records from Mayo Clinic–Austin for treatment of claimed injuries allegedly sustained during her arrest. However, the records provided referenced, but did not include, photographs of the claimed injuries. *Hruby Aff.*, ¶ 2. Plaintiff later provided medical authorizations to Dr. Carlton Frank and the Mayo Clinic–Rochester on March 18, 2015.[1] *Correspondence to Flynn (3/18/15)*, Ex. 8. However, she did not provide the additional authorizations as previously requested.

---

[1] The releases for Dr. Frank and Mayo Clinic–Rochester were dated April 9, 2015. When Defendants attempted to obtain records with these releases, Mayo Clinic refused to provide Plaintiff's records as they were not dated appropriately. *See* Ex. 10.

*Plaintiff's Emotional Distress Claim*

On March 31, 2015, Defendants again requested additional medical authorizations be executed as the authorization for "Dr. Carlton Frank" was not accurate[2] and additional medical providers were identified in Plaintiff's Answers to Interrogatories, for which Plaintiff failed to execute the authorizations provided. *Correspondence to Kuhlmann (3/31/15)*, Ex. 9. Plaintiff did not respond to this request. Thus, on April 29, 2015, Defendants again forwarded the requested authorizations to Plaintiff. *Correspondence to Kuhlman (4/29/15)*, Ex. 10.

In response to Defendants' request, Plaintiff advised that she:

> will only be seeking garden variety emotional distress claims. Further, while [Plaintiff] was injured by your clients' conduct, she does not claim to have suffered any permanent physical injuries. As such, we do not believe that her unrelated primary care records or chiropractic records are relevant to this matter. Further, since she will only be claiming garden variety emotional distress damages for mental health damages, we will not be providing releases for Mower County Health and Human Services, Crystal Peterson, and are revoking our release for Dr. Frank's office.

*Correspondence to Flynn (5/5/15)*, Ex. 11.

On May 18, 2015, defense counsel wrote Plaintiff again requesting authorizations be provided as Plaintiff's mental health condition was placed in controversy. *Correspondence to Kuhlman (5/18/15)*, Ex. 12. However, Defendants advised that they would forego further discovery into Plaintiff's mental and psychological records if Plaintiff stipulated that (1) she would not call a treating provider to testify at trial and (2)

---

[2] Dr. Frank's office closed abruptly. We were advised to obtain an additional authorization for Community Technology Services to obtain Plaintiff's medical records. This authorization was sent to Plaintiff's counsel on March 31, 2015. *Ex. 9.*

she was seeking only nominal emotional distress damages and agreed. *Id.* Plaintiff agreed, in part, to this proposal—she agreed to rely exclusively on her testimony at trial and forego calling a treating provider to support her claim. *Correspondence to Hruby (5/20/15)*, Ex. 13. However, Plaintiff's counsel advised that, "[w]e would intend to put my client on the stand to testify about her emotional [di]stress damages and potential family members, but it would be up to the jury to decide what amount would compensate her for such damages." *Id.*

In an effort to determine whether Plaintiff's proposal was acceptable, Defendants decided to proceed with Plaintiff's deposition on June 3, 2015. Less than one-hour before the deposition was set to begin, Plaintiff supplemented her document production with medical records, which revealed that she received a [redacted] on November 19, 2013, approximately seven months after this incident. *See Billing Records (filed under seal)*, Ex. 14; Ex. 1, p. 199-200. Nonetheless, Defendants' proceeded with Plaintiff's deposition, specifically reserving the right to reopen Plaintiff's deposition "as it pertains to any information in those medical records . . . [that] we've not been provided" authorizations to obtain. Ex. 1, p. 213.

During her June 3, 2015 deposition, Plaintiff testified at length regarding her emotional distress. Ex. 1, p. 173-200. She testified that, as a result of the incident, she:

- [redacted]



CONFIDENTIAL PER PROTECTIVE ORDER
FILE UNDER SEAL

- [redacted]

- [redacted]
- [redacted]

*Id.* at 173-192.

She testified that, in the weeks following the incident, she was having [redacted] . . . all the time." *Id.* at 178. She had so many [redacted] she "couldn't count" the number. *Id.* During these [redacted], she explained that she [redacted]

Plaintiff claims that several of her symptoms of emotional distress are ongoing. She testified that, to this day, she still has [redacted], has "a really hard time with [the incident] emotionally," and [redacted] *Id.* at 183-184.

Wagner testified that she discussed her [redacted] resulting from her arrest with public health nurse, Karen Frank. *Id.* at 181-183. She also treated for [redacted] with Dr. Carlton Frank, as she was concerned that she would "transfer [her] emotions from what I went through in Roseville to what I was going through at home." *Id.* at 187. Moreover, she talked to family facilitator, Crystal Peterson about her



CONFIDENTIAL PER PROTECTIVE ORDER
FILE UNDER SEAL

emotional issues related to this incident. *Id.* at 192-194. Plaintiff testified that, in addition to discussing her emotional distress and resulting symptoms with these providers, she also relayed the events and circumstances surrounding her arrest. *Id.* at 194. This testimony is reflected in her Answers to Interrogatories, which identified Karen Frank and Crystal Peterson as individuals who have "information concerning the facts of the incident or occurrence herein, the events leading up thereto or immediately thereafter." Ex. 8, p. 5.

*Plaintiff's Physical Injury Claim*

Plaintiff also claims she sustained a physical injury as a result of the incident. Ex. 7, 3-4. Specifically, she claims [redacted] *Id.* She received medical treatment at the Mayo Clinic–Austin for the claimed injuries and disclosed regular treatment at Bollingberg Chiropractic. *Id.* at 4. With the Mayo Clinic–Rochester release, Defendants requested records from the Mayo Clinic system. However, the Mayo Clinic–Austin will not accept the Mayo Clinic–Rochester authorization. *Email Thread (7/24/15-8/6/15)*, Ex. 15. Thus, Defendants requested a Mayo Clinic–Austin authorization be executed. *Hruby Aff.*, ¶ 3. When an authorization was not provided, Defendants followed up on this request on July 24, 2015. Ex. 15. When no response was received, Defendants again followed up on this request on August 6, 2015. *Id.* In response, Plaintiff refused to provide the authorization because it was not limited in time to dates "very close to her treatment date." *Id.* To date, Defendants have yet to be provided with an authorization for Mayo Clinic–Austin, the facility she treated at following the incident and the provider that documented her



**CONFIDENTIAL PER PROTECTIVE ORDER**
**FILE UNDER SEAL**

claimed injuries. *Hruby Aff.*, ¶ 5. Further, Plaintiff has not produced an authorization to obtain records from Bollingberg Chiropractic.

***Efforts to Resolve Discovery Dispute***

During Plaintiff's deposition, counsel discussed whether a stipulation could be drafted to satisfy both parties' concerns regarding Plaintiff's emotional distress damages. Plaintiff sought to limit the disclosure of her medical records and Defendants sought to limit her lengthy testimony regarding her claimed emotional distress, including but not limited to, [redacted] she claims relate to this incident. *Hruby Aff.*, ¶ 4. On June 18, 2015, Plaintiff's counsel provided a proposed stipulation on Plaintiff's emotional distress claim. *Correspondence to Flynn & Hruby (6/18/15)*, Ex. 16. Defendants objected to Plaintiff's proposal as it allowed Plaintiff to testify, at length, regarding the extensive and severe emotional distress she claims relates to this incident. Thus, Defendants proposed a stipulation, which prohibited Plaintiff from testifying about her emotional distress, but included the following jury instruction:

> Plaintiff Lisa Wagner asserts that as a result of her arrest on April 13, 2013, she has experienced emotional distress including, anxiety, embarrassment, and humiliation. Ms. Wagner's claim for mental and emotional distress is limited to the amount of distress which is usually associated with the physical injuries claimed as a result of the incident. Ms. Wagner has not sought, and does not intend to seek any treatment or counseling for emotional distress claimed as a result of this incident. The Defendants, Officer John Jorgensen, Officer Bryan Anderson, and the City of Roseville deny Ms. Wagner's assertion that she sustained emotional distress as a result of her arrest on April 13, 2013 and that any claimed anxiety, embarrassment or humiliation is a result of her own actions.

*Correspondence to Kuhlman (8/20/15)*, Ex. 17. Further, Defendants again advised Plaintiff that she put her mental health condition in controversy by alleging mental



CONFIDENTIAL PER PROTECTIVE ORDER
FILE UNDER SEAL

anguish and emotional distress damages and testifying, at length, to a myriad of mental health/emotional issues and physical manifestations of those issues which she attributes to her April 13, 2013 arrest. *Id.*

Plaintiff revised the stipulation to allow for unfettered testimony regarding her claimed emotional distress damages from lay-persons and removed Defendants' proposed jury instruction. *See Correspondence to Hruby & Flynn (9/3/15)*, Ex. 18. On September 4, 2015, counsel advised that Defendants could not agree to the revised stipulation as it would allow Plaintiff to testify about her [redacted] and other claimed emotional injuries, which exceed ordinary and commonplace emotional distress and, therefore, placed her emotional and mental health condition in controversy. *Correspondence to Kuhlman (9/4/15)*, Ex. 19.

When it became apparent that the parties were unable to resolve this dispute, Defendants contacted the Court to obtain a hearing date on this motion. However, due to the efforts to resolve this dispute without judicial intervention, the parties are on the eve of the discovery deadline. The discovery and independent medical examination (IME) deadlines are October 1, 2015. ECF No. 11.

## ARGUMENT

### I. PLAINTIFF'S MEDICAL RECORDS ARE RELEVANT TO HER DAMAGES CLAIMS.

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged mater than is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This rule is construed broadly to encompass "any matter that bears

on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

The discoverability of medical records is governed by the relevancy standard of Fed. R. Civ. P. 26, and not the "in controversy" standard required for an independent medical examination ("IME") under Rule 35.[3] *See Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964) ("[I]n none of the other discovery provisions is there a restriction that the matter be 'in controversy,' and only in Rule 34 is there Rule 35's requirement that the movant affirmatively demonstrate 'good cause.'"); *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000) (finding that employee's claim of sex discrimination and emotional distress placed her medical condition at issue, making her medical records relevant, and, absent a showing of bad faith, discoverable); *Sandoval v. Am. Bldg. Maintenance Indus., Inc.*, 267 F.R.D. 257, 268-69 (D. Minn.2007); *Schaadt v. St. Jude Medical*, 05–1167 (RHK/JSM), 2006 WL 7090866, at *9–10 (D. Minn. Apr. 4, 2006), *aff'd*, 2006 WL 7137405 (D. Minn. May 5, 2006) (finding that even if a plaintiffs' physical or mental conditions were not "in controversy," for the purposes of Rule 35, medical records were still relevant under Rule 26 where a significant source of a plaintiffs' damages were based on her claim of emotional distress).

---

[3] Defendants acknowledge that there is a split of authority in the District of Minnesota as to whether the Rule 35 "in controversy" and "good cause" requirements, that bear on IMEs, apply to the production of medical records. *See Sandoval v. Am. Bldg. Maintenance Indus., Inc.*, 267 F.R.D. 257, 268-68 (D. Minn. 2007). However, as outlined below, Wagner has placed her condition in controversy as well. *See infra* pages 14-18. Accordingly, the requirements of both Rule 26 and Rule 35 have been met.

In this case, Plaintiff is seeking damages for "physical injury and mental anguish" in an amount in excess of $75,000. ECF No. 19, ¶ 39. Admittedly, Plaintiff has received physical and psychological treatment related to this incident. *See* Ex. 7, p. 3; Ex. 1, p. 155, 181-183, 187, 192-194.

**A. Plaintiff's Mental Health Records are Discoverable**

"A plaintiff puts her mental condition at issue if she intends to seek anything more than nominal damages for any alleged emotional distress." *Schaadt*, 2006 WL 7090866, at *5. Here, Plaintiff has refused to execute a stipulation that would limit her emotional distress damages to a nominal amount. Ex. 13. Further, on the face of her Complaint, she is seeking in excess of $75,000 in emotional distress damages. *ECF No. 19,* ¶ 39. To support her damages claim, she intends to testify as to her opinion on the magnitude of her emotional distress damages. Ex. 11, 13. The Court expressly rejected this approach in *Schaadt*, noting that allowing plaintiff to testify, subject to cross-examination only, "would slant the playing field in favor of Schaadt" and ordering medical authorizations be produced. *Schaadt*, 2006 WL 7090866, at *4-5; *see also Doverspike v. Chang O'Hara's Bistro, Inc.*, 03-5601 (ADM/AJB), 2004 WL 5852443, at *2 (D. Minn. July 13, 2004) (when plaintiff's mental health condition is the "crux" of the damages case, mental health records are discoverable).

Plaintiff's emotional distress claim is the crux of her damages case. Ex. 11. Following her April 13, 2013 arrest, Plaintiff sought counseling and/or psychological services. Ex. 7, p. 6 (identifying counselors Karen Frank and Crystal Peterson as individuals with information regarding the incident and events thereafter); Ex. 14 (billing

invoices [redacted]); Ex. 1, p. 181-183, 187, 192-194. Plaintiff has discussed her arrest and her feelings related to her arrest with three separate health care providers. *Id.* Thus, her medical records, conveying information about the incident and detailing her claimed ongoing emotional distress allegedly related to the incident, are relevant and discoverable. *See* Fed. R. Civ. P. 26(b)(1); *Schaadt*, 2006 WL 7090866, at *5; *Doverspike*, 2004 WL 5852443, at *2. Therefore, she must be compelled to execute authorizations for release of medical information pursuant to Defendants' Request for Medical No. 2. *See* Ex. 4, p. 3.

Plaintiff implicitly acknowledges that her psychological records are subject to discovery as she initially executed an authorization for Dr. Carlton Frank[4] and has identified health care providers Karen Frank and Crystal Peterson as persons with knowledge to support her claims. *See* Ex. 7, p. 3, 5; *see John Doe I*, 2008 WL 4572515, at * 1 (stating a garden variety emotion distress "is entirely different from a mental condition requiring treatment."). Given these discovery responses revealing some form of treatment for her claimed emotional distress, Defendants are entitled to obtain Plaintiff's psychological and counseling records.

Furthermore, Defendants are entitled to Plaintiff's mental health records to determine if there are other reasons for Plaintiff's claimed emotional distress. This Court has explained that defendants are "entitled to present evidence that other stressful situations in her past personal history have contributed to her emotional distress."

---

[4] Wagner later revoked consent for release of Dr. Carlton Frank's medical records. *See* Ex. 11.



CONFIDENTIAL PER PROTECTIVE ORDER
FILE UNDER SEAL

*Schaadt*, 2006 WL 7090866, at *6. As Plaintiff admittedly saw counselors following this incident, Defendants are entitled to review the medical records to determine the nature and extent of her claimed injury and identify any other potential stressors relevant to her emotional distress claim. *Id.* Therefore, Plaintiff must be compelled to execute medical authorizations as requested in Request for Medical No. 2 and supplement her answer to Interrogatories No. 2-3.

**B. Plaintiff's Physical Medical Records are Discoverable.**

Plaintiff sought treatment at Mayo Clinic–Austin for injuries she allegedly sustained during her arrest. *See* Ex. 1, p. 155. During her April 16, 2013 treatment, the Mayo Clinic photographed her claimed injuries. *Id.* To date, despite multiple requests for a Mayo Clinic–Austin authorization, Defendants have yet to be provided with the authorization as Plaintiff will not agree to release records beyond her April 16, 2013 date of treatment. *See* Ex. 15. Further, she has refused to execute an authorization for Bollingberg Chiropractic. Ex. 11. As Plaintiff is alleging injuries to [redacted], these records are relevant and discoverable. Further, Plaintiff's privacy interests do not allow her to unilaterally place unduly restrictive dates on any release of medical information. *See Schaadt*, 2006 WL 7090866, at *6; *Sauer v. Burlington Northern R. Co.*, 169 F.R.D. 120, 123-124 (D. Minn. 1996). Thus, Plaintiff must be compelled to execute medical authorizations to allow release of medical records for a 10 year period to fully evaluate her physical injury claim.



CONFIDENTIAL PER PROTECTIVE ORDER
FILE UNDER SEAL

## II. PLAINTIFF HAS PLACED HER MENTAL CONDITION IN CONTROVERSY

Plaintiff asserts her emotional distress claims are "garden variety" claims. *See, e.g.*, Ex. 11, 13. Garden variety emotional distress is defined as "the normal distress that might flow from an unpleasant event" and "ordinary and commonplace emotional distress that is simple or usual." *John Doe I v. Mulcahy, Inc.*, 08-306 (DWF/SRN), 2008 WL 4572515, at * 1 n.2 (D. Minn. Oct. 14, 2008) (citing to several cases defining emotional distress).

Plaintiff's claimed injury far exceeds "garden variety" emotional distress. Plaintiff is claiming a litany of physical and psychological manifestations of her emotional distress, including [redacted] *See supra* pages 5-7 for a complete list of Plaintiff's claimed emotional injuries. Further, she has discussed her emotional distress with three health care providers—Nurse Karen Frank, Dr. Carlton Frank, and Family Facilitator Crystal Peterson. Ex. 1, p. 181-183, 187, 192-194. Ms. Wagner's testimony, in conjunction with her [redacted], places her medical condition in controversy.

An individual's medical condition is placed in controversy when one of the following factors is present:

(1) a cause of action for intentional or negligent infliction of emotional distress;

(2) an allegation of a specific mental or psychiatric injury or disorder;



CONFIDENTIAL PER PROTECTIVE ORDER
FILE UNDER SEAL

(3) **a claim of unusually severe emotional distress;**

(4) the plaintiff's offer of expert testimony to support a claim of emotional distress; and/or

(5) the plaintiff's concession that her mental condition is "in controversy" within the meaning of Rule 35.

*O'Sullivan v. Minnesota*, 176 F.R.D. 325, 328 (D Minn. 1997) (emphasis added); *Womack v. Wells Fargo Bank, N.A.*, 275 F.R.D. 571, 572-73 (D. Minn. 2011).

Here, Plaintiff has placed her medical condition in controversy as her emotional distress claims are unusually severe. *See Schaadt*, 2006 WL 7090866, at *3-4; *John Doe I*, 2008 WL 4572515, at *1 (rejecting the position that reliance on non-medical testimony prohibits discovery into emotional distress damages, finding that if staged discovery revealed that a plaintiff's emotional distress allegations exceed normal or usual distress, plaintiff has placed his condition in controversy and is required to produce medical records); *Blake v. U.S Bank Nat. Assn.*, 03-6084 (PAM/RLE) 2004 WL 5254174, at *4 (D. Minn. May 19, 2004) (considering plaintiff's deposition testimony when evaluating whether her emotional distress claim is severe).

In *Schaadt*, a plaintiff claimed she was seeking garden variety emotional distress but alleged that she experienced weight loss, difficulty sleeping, frequent nightmares, acne, fatigue, feeling worthless, loss of self-confidence, social withdrawal, and loss of hope. *Id.* at *3. The Court reviewed the symptoms and explained that:

> While sadness, anger, grief and loneliness are emotions one might expect to feel with a claim of garden variety emotional distress damages, . . . here, Schaadt is alleging more. She is claiming that her ability to function has been impacted by [defendant]. Her sleep is affected; she has lost weight;

> she suffers from acne; she feels depressed and melancholy; and she has withdrawn socially. These are all impairments of her ability to function normally, and they bother her today. Based on the record, this Court concludes that that Schaadt has gone beyond a mere allegation of "garden variety" emotional distress, and that she is claiming unusually severe emotional distress . . .

*Id.* (internal citations omitted). Thus, the Court found Schaadt's claimed manifestations of emotional distress placed her mental health condition in controversy and ordered medical authorizations be executed and Schaadt to submit to an independent medical examination (IME). *Id.* at *4-6.

Like the *Schaadt*, Plaintiff is claiming wide-ranging effects, including [redacted] allegedly due to the emotional distress resulting from her April 13, 2013 arrest. *See* Ex. 1, p. 173-200; *supra* pages 5-7 ([redacted]). Plaintiff claims she still suffers from this severe emotional distress more than two years after the incident. *See* Ex. 1, p. 183-184 (detailing ongoing symptoms). Therefore, Plaintiff has placed her mental health condition in controversy and Defendants are entitled to discovery into her mental health history and a psychological IME.

Under Fed. R. Civ. P. 35, "[t]he court . . . may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). The purpose of Rule 35 is to "provide a level playing field between the parties in their respective efforts to appraise the Plaintiff's psychological state. *O'Sullivan*, 176 F.R.D. at 327; *Tomlin v. Holecek*, 150 F.R.D. 628, 632 (D. Minn. 1993). In order to obtain an order requiring a

**CONFIDENTIAL PER PROTECTIVE ORDER**
**FILE UNDER SEAL**

party to submit to an IME, the requesting party must show that: (1) the party has placed their medical condition in controversy and (2) there is good cause for the examination. *Schlagenhauf*, 379 U.S. at 118; *Schaadt*, 2006 WL 7090866, at *3-4. As stated above, Plaintiff's mental health condition has been placed in controversy as she is claiming severe, prolonged and extensive emotional distress.

When a party has placed their mental or physical condition "in controversy," "good cause" for an IME is also established. *See Tomlin*, 150 F.R.D. at 630; *Schlagenhauf*, 379 U.S. at 113. Here, there is good cause for an IME as Plaintiff is alleging unusually severe emotional distress, which is ongoing and characterized by multiple emotional and physical manifestations. *See Schaadt*, 2006 WL 7090866, at *3-4; *see* Ex. 1, p. 173-200 (detailing symptoms attributed to emotional distress). Moreover, her billing records [redacted]. *See* Ex. 14. The only way the "playing field" will be leveled is via the provision of additional medical records and requiring Plaintiff to submit to an IME to determine the nature and extent of her emotional distress. *See Schlagenhauf*, 379 U.S. at 113. Thus, there is good cause to compel Plaintiff to execute medical authorization and submit to a psychological IME.

## III. THE DISCOVERY AND IME DEADLINES SHOULD BE EXTENDED TO ALLOW DISCOVERY INTO PLAINTIFF'S CLAIMED EMOTIONAL DISTRESS DAMAGES.

Pursuant to the Pretrial Scheduling Order, the discovery and IME deadline are October 1, 2015. ECF No. 11. Under Fed. R. Civ. P. 16 and Local Rule 16.3, a scheduling order may be modified upon motion of a party and as showing of good cause.



CONFIDENTIAL PER PROTECTIVE ORDER
FILE UNDER SEAL

L.R. 16.3; Fed. R. Civ. P. 16(b)(4). According to the Eighth Circuit, "[t]he primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008) (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)); *see also* Fed. R. Civ. P. 16(b), Advisory Committee Note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

Here, good cause exists to extend the discovery and IME deadlines to allow for limited discovery into Ms. Wagner's mental health condition. Until September 3, 2015, the parties continued to work diligently toward a resolution of this discovery dispute. The Court was contacted the same day the parties' reaching an impasse for a date on which it could hear this Motion to Compel. *Hruby Aff.*, ¶ 6. Unfortunately, no dates were available prior to the October 1, 2015 deadlines. *Id.* Thus, in light of the parties' attempt to resolve this dispute without Court intervention, in compliance with Local Rule 7.1, good cause exists to modify the Pretrial Scheduling Order.

Defendants' request the following modification of the Pretrial Scheduling Order:

1. Discovery be extended until **January 15, 2016** for the limited purpose of obtaining medical records and allowing Plaintiff's deposition to be reopened for questioning on her mental or physical conditions revealed in these records;

2. The IME deadline be extend to **January 31, 2016** to allow adequate time to gather medical records prior to a psychological IME;

3. The expert discovery deadline, including expert depositions, be to **March 1, 2016**; and

4. The non-dispositive motion deadline for motions relating to expert discovery be extended to **April 1, 2016.**

All other dates, including the trial ready date of May 1, 2016, can remain in effect. This modification would allow Defendants an adequate opportunity to obtain medical authorizations and records from Ms. Wagner's treating physicians and conduct a psychological IME of Plaintiff necessary to further evaluate and defend against her emotional distress claim.

## CONCLUSION

Based on the foregoing, Defendants respectfully request their Motion to Compel production of medical authorizations and to compel Plaintiff to submit to an IME be granted.

Dated: Oct. 1, 2015

JARDINE, LOGAN & O'BRIEN, P.L.L.P.

By: Vicki Hruby

JOSEPH E. FLYNN (#165712)
VICKI A. HRUBY (#0391163)
8519 Eagle Point Boulevard, Suite 100
Lake Elmo, MN 55042-8624
Phone: 651-290-6500
Fax: 651-223-5070

Attorneys for Defendants