UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lisa Wagner,

Plaintiff,

v.

Officer John Jorgensen, individually and in his professional capacity as a Roseville Police Officer; Officer Bryan Anderson, individually and in his professional capacity as a Roseville Police Officer

Defendants.

Case No: 14-CV-3422 (PJS/SER)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE**

## INTRODUCTION

Plaintiff submits the following memorandum of law in opposition to Defendants' motions in limine.

## I. THE COMPLETE TASER DOWNLOAD IS RELEVANT EVIDENCE UNRELATED TO OFFICER JORGENSEN'S CHARACTER

Officer Jorgensen's Taser Download shows that he used his Taser five times in the incident involving Ms. Wagner. (Kuhlman Dec. at Ex. 1). At his deposition though, he indicated that the Taser malfunctioned, the battery was not working properly, and implied that two of 3 second Taser cycles administered to Ms. Wagner had no impact on her because the battery was reading "0." (Kuhlman Dec. at Ex., 2). Despite the fact that his Taser malfunctioned, Officer Jorgensen did not seek to have Taser repaired, but rather

continued to use it going forward as is evidenced in his complete Taser log. Further, there was a previous other "0" battery reading prior to the incident involving Ms. Wagner after which Officer Jorgensen opted to continue to use the same Taser and not send it in for repair or ask for a replacement one. The fact that Officer Jorgensen continued to use the same Taser despite other "0" battery readings suggests that it was operable and delivering a charge and that the two additional cycles administered to Ms. Wagner when the battery was reading "0" did cause Plaintiff harm. Thus, the complete Taser log is relevant evidence as it can be used to dispute Defendant Jorgensen's claim that his Taser malfunctioned the night of the incident and that no charge was delivered to Ms. Wagner on several of the cycles.

## II. DEFENDANT'S MOTION IN LIMINE REGARDING MS. WAGNER'S EMOTIONAL DISTRESS SHOULD BE DENIED IN PART

Plaintiff does not intend to call any of her treating physicians to testify, and as such, did not list any on Plaintiff's witness list so Defendant's motion is largely moot. Plaintiff does take issue, however, with Defendant's position that Plaintiff should be "barred from testifying about any conditions that are beyond 'the normal distress that might flow from an unpleasant event.'" Plaintiff should be allowed to provide testimony of how Defendants' conduct affected her.

Additionally, Defendant seeks to preclude Ms. Wagner from testifying that she felt anxious and depressed after the incident. While PTSD is a formal diagnosis, "depression," and "anxiety" are emotions that many people experience and as such, if

Plaintiff felt depressed or anxious, she should be able to describe these emotions to the jury when explaining her emotional damages.

## III. DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE THAT OFFICERS SHOULD HAVE EMPLOYED OTHER ALTERNATIVES TO EFFECTUATE PLAINTIFF'S ARREST.

To date, there has been no testimony submitted by Plaintiff or her police practices expert witness in this litigation that officers should have employed other alternatives. As such, Defendant's Motion in Limine is premature. To the extent that this matter even becomes an issue at trial, Plaintiff requests that this motion be revisited at that point.

## IV. DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF POLICE PRACTICES EXPERT DAN MONTGOMERY SHOULD BE DENIED

### a. Montgomery's testimony regarding professional police practice standards is appropriate.

While expert testimony regarding reasonableness of police conduct ***in light of the Fourth Amendment,*** constitutes a legal conclusion and is considered inadmissible[1], testimony from experts on whether an officer's conduct complies with police practices is admissible. Here, Mr. Montgomery does not provide any legal conclusions regarding the Fourth Amendment's standards. Rather, he bases his opinions solely upon whether Defendant Jorgensen's conduct conformed to professional police practices and, as such, are admissible. *See Peters v. Woodbury County*, 979 F. Supp. 2d, 901, 925 (N.D. IA., 2013)

---

[1] *Elex v. Glirbas*, 2014 U.S. Dist. LEXIS 73167 at *22 (D. Minn. May 29, 2014) (emphasis added)

(allowing expert witness to explain the kind of force applied as well as whether using a particular restraint was appropriate under the circumstances presented under recognized standards and practices for jail administration. Also allowing expert witness to respond to abstract and hypothetical questions by opining whether the force described was or was not ***reasonable*** in the circumstances described in the question, and also whether he personally believed the force used against Peters was ***reasonable*** under the circumstances) (citing *Southern Pine Helicopters*, 320 F.3d at 841) (8th Cir. ; U.S. Dist. LEXIS 157049 at * (N.D. IA, Sept. 16, 2011); *See also Shannon v. Koehler,* No. C 08-4059-MWB, 2011 U.S. Dist. LEXIS 157049 at *106 (finding police expert could testify as to whether defendant officer's specific conduct complied with generally accepted police practices as it could be helpful to the jury in determining whether the officer acted reasonably) (citation omitted).

The facts in this case are distinguishable from those in the cases cited by Defendant. In *Schmidt v. City of Bella*, the court excluded portions of the expert witness's testimony because the witness actually provided "legal conclusions regarding the reasonableness of conduct ***in light of Fourth Amendment standards***." 557 F.3d 564, (8th Cir. 2009) (emphasis added). Similarly, in *Peterson v. City of Plymouth*, the court excluded the testimony of an expert witness because his overall opinion was that the officers' conduct comported with the "standards under the Fourth Amendment." 60 F.3d 469, 475 (8th Cir. 1995). Here, because Montgomery's opinions are linked exclusively to police practices and not the Fourth Amendment, they are admissible and do not constitute legal conclusions.

### b. Montgomery's opinions are not based on aspirational standards.

Defendant infers that Montgomery uses the term "professional police practices" to equate to "best practices" and aspirational standards as a whole throughout his brief. (Def. Br. at p. 4). This is not supported in the record. Nowhere in the report does Mr. Montgomery state this.

The phrase "best practices" only occurs three times in the entire document and is contained strictly in the literature cited by Montgomery and is largely inconsequential to his opinions at issue here. Below are the three times this phrase is used and the context in which it is used.

Page 11 of Montgomery's Report:

> In another study conducted by the New York Civil Liberties Union, 851TASER and ECW applications across eight different police agencies in the State of NewYork, including the New York City Police Department were evaluated and in 60 percent of the cases, agencies did not meet the recognized ***best practices*** standard of using TASERS and other ECW's only in situations where officers could document activeaggression or a risk of physical injury.

Page 12 of Montgomery's Report:

> Agencies should develop an ECW policy that can be accepted by that agency's general population. This policy should provide discretion to the end-user officer without giving them free reign. The agency's policy should conform with recognized ***best practices*** regarding officer safety, use of force, and the use of ECW's.

Page 16 of Montgomery's Report:

> According to AEGIS Industries, *The public will not continue to accept a lack of accountability for the electrical output of these potentially deadly weapons. Deploying potentially deadly weapons with no recognized standards for safety, measurement, or operational performance and not knowing if these weapons are even within a manufacturer's specification, is inexcusable. Since* ***best practices*** *for radar guns, breathalyzers, and window tinting testers include measurement for proper operation and reliability, ESW's should be measured as well. After all, ESW's are not simply another electronic device, but a potentially deadly force option designed to save lives, not cause or contribute to deaths. Updating law enforcement agencies' policies, practices, and . . .*

**c. As an expert witness who relies upon facts and data, Montgomery is qualified to offer opinions regarding the "0" battery readings.**

Federal Rule of Evidence 703 specifically allows for experts to base their opinion on "facts or data" that the expert has either been made aware of or personally observed. Further, it "is common in technical fields for an expert to base an opinion on what a different expert believes on the basis of expert knowledge not possessed by the first expert." *In re Genet. Mod. Rice Litig.*, 666 F.Supp.2d 1004, 1033 (E.D. Mo 2009) (quoting *Dura Auto. Sys. Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (additional citations omitted).

Here, Montgomery formed his conclusion based upon input from another expert in the field of Tasers and use of force. Such reliance upon this other expert's knowledge is acceptable and in conjunction with his own background provides him the necessary foundation to provide opinion. In actuality, Defendant's concern with Mr. Montgomery's qualifications goes to the weight of his testimony, as opposed to his actual qualifications and, as such, should be denied.

Further, it appears that Defendant takes issue with the fact that Mr. Montgomery did not identify the expert by name he consulted with to form this opinion. Despite the fact that Defendant has been in possession of Mr. Montgomery's opinion since August of 2015, this is the first time they have raised any issue regarding the identity of the expert who he consulted with on the 0 battery reading matter. Nor did Defendant bring a *Daubert* motion or conduct any expert discovery whatsoever if it really was concerned about the source of Mr. Montgomery's opinion. Regardless, the identity of the expert

Mr. Montgomery consulted with on this matter is Dr. Ron Martinelli who is referenced in Mr. Montgomery's report.

Finally, Mr. Montgomery's comments regarding Roseville's failure to send the Taser probes to be forensically examined relates to his opinion on professional police practices concerning Taser use and upkeep and as discussed above should be recognized as an admissible opinion.

**d. The fact that Tasers and ECWs can cause death is highly relevant evidence as it relates to the overall reasonableness of Defendant Jorgensen's conduct.**

The underlying issue in this case in regards to Defendant Jorgensen's conduct is whether it was reasonable for him to apply five (5) successive taser cycles to a 108 pound woman who was unarmed, not actively resisting arrest, had not threatened the officers, and was not fleeing the scene. Plaintiff anticipates that Defendants will offer testimony regarding how "safe" tasers are and attempt to downplay the degree of force and pain they inflict upon people. To this end, Officer Jorgensen previously testified at his deposition that he has been subjected to tasings on two occasions and several of the demonstrative exhibits proposed to be offered at trial by Defendant appear to seek to trivialize the amount of force a Taser delivers. (Kuhlman Dec at Ex. 3).

Plaintiff's theory of the case is that it was not reasonably necessary to use an ECW to arrest a non-violent, non-resisting suspect. The fact that Tasers can cause death and serious injury is a fact that a jury should be able to hear to assist it in evaluating whether Jorgensen's conduct of applying five (5) successive Taser cycles to Ms. Wagner was indeed reasonable under the circumstances.

**e. Mr. Montgomery has the proper foundation to offer an opinion on whether neuromuscular incapacitation (NMI) occurred.**

Mr. Montgomery's background, training, and education on Tasers and police practices clearly qualifies him to opine on whether Plaintiff suffered NMI as a result of the Taser cycles she sustained. He stated in his report that he actually reviewed the images of Ms. Wagner's injuries from the night in question and from them could conclude that in his opinion at least one Taser barb did seat. Just because Defendant disagrees with Mr. Montgomery's conclusion, does not make it inadmissible on foundational grounds.

Moreover, in furtherance of its argument, Defendant takes liberties with the factual record stating that "Plaintiff has admitted that the probes did not penetrate her skin." (Def. Br. at p. 8). What was actually said by Ms. Wagner at her deposition was:

Q: To your knowledge, no Taser barb made direct contact with your skin, correct?

A: I disagree with that.

Q: You disagree?

A: Yes.

Q: Where was – which Taser barb made contact with your skin? One was in the jean material and one was –

A: There were . . . on my left thigh.

. . . . ……………………………………………

Q: I'm asking was a Taser barb imbedded to your knowledge, in your skin, like stuck in your bare skin? Did you observe that?

A: I didn't visually see the Tasers imbedded.

(Ex. 4 Hruby Aff. at 19-21). Here, Plaintiff is not admitting that the barbs never penetrated her skin at all the entire evening, she is simply stating that she was unable to observe a barb imbedded in her skin after the conclusion of the ordeal. The Court should keep in mind that 5 successive Taser cycles were applied to Ms. Wagner and that two officers were pinning her down as she writhed in pain from the Taser applications. Under these circumstances, it is very possible, that a Taser barb did become lodged in her skin and during the continued scuffle became jostled loose.

In regards to Mr. Montgomery not identifying which specific photograph he relied upon in forming his conclusion, Plaintiff produced 20 images of her injuries to Defendant that she sustained the night in question. Six of these twenty images were of her face, arm, and hand which incurred no Taser injuries and thus were easily excludable. Again, despite the fact that there was an extended expert discovery period, Defendant never asked for clarity on which of the 16 photos Mr. Montgomery was referencing in his opinion until now on the eve of trial.

**f. Mr. Montgomery reliance upon Dr. Martinelli and Staton's study is relevant, fits the case, and will not confuse the jury.**

Defendant argues that Martinelli's study does not fit the facts of this case because Ms. Wagner was only subjected to drive-stun Taser cycles and was never subjected to a NMI cycle. This is Defendant's theory of the case. Plaintiff disputes this and claims that

she was exposed to an NMI cycle, and as such, Martinelli's study is relevant to Plaintiff's case.

Defendant's argument that Martinelli's study is speculative also misses the mark. Here, Martinelli based his conclusions upon the input provided to him from over 100 individuals subjected to Taser cycles and categorized their responses. From these categorical responses, Martinelli formed his conclusions.

Defendant claims that Martinelli's approach lacks objective evidence. This is incorrect. Objective evidence is simply evidence that is based on fact or things quantifiable and measurable. Here, the facts that Martinelli used to form his conclusion were the categorical responses provided to him by over100 test subjects. Survey results and categorical input from test subjects is objective evidence and the type of data that social scientists regularly rely upon in forming their conclusions. To follow Defendant's argument that such evidence is not objective, would preclude nearly every social scientist from serving as an expert witness. Defendant's argument again goes to the weight of the evidence gleamed from Martinelli's study, not whether it was subjective.

## CONCLUSION

For the foregoing reasons as well as those to be advanced at oral argument, Plaintiff respectfully requests that the Court deny Defendants' motions in limine.

Dated: November 30, 2016

s/Christopher Kuhlman
Christopher J. Kuhlman (386840)
**KUHLMAN LAW, PLLC**

333 Washington Ave. N., Suite 335
Minneapolis, MN 55401
Phone: 612.349.2747
Fax: 612.349.2760
Email: ckuhlman@cklegal.com
ATTORNEY FOR PLAINTIFF